IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                      No. 07-40101-01/02-SAC

JOEL LEOBARDO MARTINEZ AND
KAREN M. HERNANDEZ-LOPEZ,

           Defendants.

MEMORANDUM AND ORDER

This drug case arising out of a car stop comes before the court on defendant Karen Hernandez- Lopez's motion to suppress (Dk. 15 and 16). The government has responded, opposing the suppression motion (Dk. 30) and challenging the defendant's standing (Dk. 29). After reviewing the briefs and the evidence admitted at the evidentiary hearing held on March 5, 2008, the court is ready to rule.

**Facts**

On August 17, 2007 at about 5:00 p.m., Kansas Highway Patrol Trooper Dean stopped a green 2002 Ford Explorer with an Arizona license

tag near milepost 319 on Interstate 70 in Riley County, Kansas. After stopping the vehicle, Trooper Dean exited his marked patrol vehicle and approached the Explorer, where he spoke with the driver, who identified himself as Joel Martinez,[1] and the passenger, Karen Hernandez-Lopez. Trooper Dean immediately explained to Martinez that he stopped him because he could not clearly see the rear license plate which was covered with a tinted tag cover, obscuring the registration expiration sticker.

      Defendants told Trooper Dean they were traveling from Phoenix to Kansas City where they were to meet a friend, but they did not know the address of this friend. Trooper Dean asked Martinez for his license and other documentation, and Martinez handed him an Arizona identification card and registration papers for the vehicle. With Martinez's documentation, Trooper Dean returned to his patrol vehicle where he ran the customary checks through dispatch. Dispatch advised that Martinez's license was suspended in Arizona and that he had been arrested for drug trafficking in 2001. Trooper Dean reviewed the registration and insurance information for the vehicle and saw that the Explorer had been purchased

---

[1] Mr. Martinez is a co-defendant who withdrew his motion to suppress and his joinder in this motion immediately before the hearing on this motion.

and insured by Martinez just two days before the stop.

After completing these checks, Trooper Dean reapproached the Explorer, returned Martinez's documentation, and issued a warning citation for the tag violation. He also advised him to remove the tinted tag cover from the license plate when they got a chance. Trooper Dean then told defendants, "have a safe one - see ya," and began to walk away from the Explorer. Trooper Dean noticed that Martinez began putting his window up, as if in anticipation of leaving. A couple of seconds later, Trooper Dean turned and asked the defendants if he could ask them some questions, and they responded affirmatively. When he asked if they were carrying guns or drugs,[2] both defendants replied negatively. He then asked, "Can I search?" Both defendants replied "yeah."

Trooper Dean then began to search. Toward the rear of the vehicle, he noticed that the rubber molding that seals the rear tailgate appeared to have been recently removed. He could also smell the odor of fresh paint coming from the vehicle. He noticed that the interior of the roof appeared to be much lower than normal and contained several indentations seemingly made by finger pressure in the roof padding. Trooper Dean eventually

---

[2]Trooper Dean used what he believed was the Spanish word for drugs.

placed his right hand on top of the vehicle and noticed rough paint on its roof. He then conducted a depth test between the vehicle's exterior roof and its interior ceiling, which revealed a three or four inch void. Trooper Dean was then certain that the vehicle contained a false compartment used to hide drugs or contraband.

After discovering this compartment, he arrested both defendants and directed passenger Hernandez-Lopez to follow him in the Explorer to the KDOT office, where he continued his search. Eventually, Trooper Dean removed the rear tailgate of the vehicle and saw that the bolts holding the tailgate on had been spray painted green to match the color of the vehicle and were stripped as though from use or removal. He soon discovered a trap door above the rear tailgate, behind which Trooper Dean found 47 individually wrapped bricks of cocaine, which defendant seeks to suppress.

Sometime thereafter, defendant was given Miranda warnings in Spanish, and was interrogated by a Trooper speaking Spanish.  She seeks to suppress her statements made during this interrogation as fruit of the poisonous tree, flowing from her allegedly illegal detention. Defendant is charged with one count of conspiracy to distribute and possess approximately 47 kilograms of cocaine hydrochloride, and with one count of

possession with intent to distribute approximately 47 kilograms of cocaine hydrochloride.

Defendant has repeatedly and expressly stated that she is not contesting the legality of the initial stop of the vehicle. Instead, she is challenging only the scope of her detention, specifically contending that Trooper Dean had neither reasonable suspicion nor had established a consensual encounter at the time defendants consented to his search of the vehicle.

**Standing**

The court first addresses the government's assertion that defendant, as a passenger, lacks standing. The Supreme Court recently decided that a traffic stop subjects a passenger, as well as the driver, to a Fourth Amendment seizure. *Brendlin v. California,* __ U.S. __, 127 S.Ct. 2400, 2407 (2007). Reasoning that "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission," the Supreme Court held that passengers in a traffic stop of a private vehicle have standing to challenge the initial stop, their own seizure, and any evidence derived from that seizure.

The Tenth Circuit has clarified that *Brendlin* does not mean that passengers have standing to challenge every search of the vehicle in which they are riding, stating:

> a passenger was "seized" for Fourth Amendment purposes and thus had standing to challenge the validity of the traffic stop at issue, *Brendlin v. California*, ---U.S. ----, 127 S.Ct. 2400, 2405, 168 L.Ed.2d 132 (2007), though the passenger's right to contest a subsequent search not of his or her person but the vehicle remains another question, *see Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding that a passenger who lacked a property or possessory interest in the automobile or property seized lacked standing to challenge a search of the car).

*United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206 (10th Cir. 2007).

A passenger's standing to object to a search of the vehicle thus remains subject to the *Rakas* analysis. In *Rakas*, the Court held that a passenger who asserts neither a possessory nor a property interest in a vehicle "would not normally have a legitimate expectation of privacy" in the vehicle protected by the Fourth Amendment. *Rakas*, 439 U.S. at 148-49, 99 S.Ct. at 433; *see also United States v. Ladeaux*, 454 F.3d 1107, 1112 (10th Cir. 2006); *United States v. Lewis*, 24 F.3d 79, 81 (10th Cir.) ("*Rakas* provides the definitive teaching that a 'passenger qua passenger' has no reasonable expectation of privacy in a car that would permit the passenger's Fourth Amendment challenge to the search of the car."), *cert.*

*denied*, 513 U.S. 905 (1994).To determine if a defendant had a legitimate expectation of privacy, the defendant has the burden to show "a subjective expectation of privacy in the area searched, and ... that expectation must be one that 'society is prepared to recognize as 'reasonable.'" *United States v. Leary*, 846 F.2d 592, 595 (10th Cir. 1988). The Tenth Circuit consistently holds that "without a possessory or proprietary interest in the vehicle searched, 'passengers lack standing to challenge vehicle searches.'" *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) (quoting *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1161 (10th Cir. 1995)).

Here, the defendant was a passenger and does not assert any possessory or property interest in the vehicle. Instead, the undisputed testimony and exhibits show that the motor vehicle registration and the vehicle's insurance were issued solely in the name of the driver, co-defendant Martinez.  Defendant thus lacks standing to challenge the vehicle search of defendant Martinez's vehicle.

Defendant nonetheless properly asserts that she may contest the lawfulness of her own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention. *United States v.*

*Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). *Nava-Ramirez* clarified the showing a passenger must make in order to suppress evidence obtained during a search which occurred while the defendant was being unconstitutionally detained, stating:

> To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence. Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree," either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.

*Id.* at 1130-31 (citations, quotations omitted). The court thus examines whether defendant's detention violated her Fourth Amendment rights.

**Scope of Detention**

The reasonableness of an investigative detention is judged under the principles of *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under that precedent, an officer may extend a traffic stop beyond its initial scope if the suspect consents to further questioning or if the detaining officer has a particularized and objective basis for suspecting the person stopped of criminal activity. *See United States v. Patten*, 183

F.3d 1190, 1193 (10th Cir. 1999).

**Consensual encounter**

Defendant admits that the trooper returned the documents he had taken, told them "Thank you," and took a few steps away from the car before requesting permission to ask additional questions and then permission to search, both of which they admit they granted. Defendant alleges solely that they did not believe they were free to leave when the trooper otherwise terminated the stop because the trooper never told them they were free to leave, the emergency lights on his patrol car were still flashing, and because he was armed and uniformed and quickly reinitiated contact with them by asking questions.

The Tenth Circuit defines a consensual encounter to be "the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." *United States v. Bradford,* 423 F.3d 1149, 1158 (10th Cir. 2005). "A detention for a traffic citation can turn into a consensual encounter after the trooper has returned the driver his documentation so long as 'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.' " *United States v. Wallace*, 429 F.3d 969, 974-75 (10th Cir.

9

2005) (quoting *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997).

"An officer is not required to inform a suspect that he did not have to respond to his questioning or that he was free to leave." *United States v. West*, 219 F.3d 1171, 1177(10th Cir. 2000) (citation omitted).

> ... a traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an "overbearing show of authority." Once the officer has returned the driver's documents, further questioning amounts to an unlawful detention only if the driver has objectively reasonable cause to believe that he is not free to leave. *See United States v. Shareef*, 100 F.3d 1491, 1501 (10th Cir. 1996).

*United States v. Chavira*, 467 F.3d 1286, 1290 (10th Cir. 2006) (citations omitted).

Although the determination [of when a detention ends] is context-specific, an officer's handing back defendants' papers, thanking them for their time, and beginning to walk away are generally sufficient to indicate that an individual is free to leave. *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). In these circumstances, a detention is unlawful "only when the driver has an 'objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way.' " *Id.* (quoting *United States v. Hernandez*, 93 F.3d 1493,

1498 (10th Cir. 1996)).

Factors noted by the Tenth Circuit that might communicate the continuation of a seizure include the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance with the officer's request might be compelled. *See United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1118 (10th Cir. 2007).

Defendant admits that Trooper Dean returned the documents, issued a warning citation, and told them to "have a safe one" and "see ya," before taking a step or two away from the vehicle, but contend that such statements are equivocal because he failed to tell them they were free to go. Defendant contends that verbal disengagement must be clear and unequivocal. Such a requirement would establish a bright-line rule-like requiring an officer to say "you are free to go" before his consent to search will be recognized as voluntary."  This requirement has been rejected by the United States Supreme Court, *see Ohio v. Robinette*, 519 U.S. at 39-40 (1996), and by the Tenth Circuit, *see United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) (use of the phrase "thank you" signaled the end of detention); *United States v. Elliott,* 107 F.3d 810, 814 (10th Cir.

1997) (handing back of documents sufficient to end detention).

Defendant additionally contends that no reasonable person would feel free to leave when a uniformed, armed officer reapproaches the vehicle immediately after having left it. The Tenth Circuit rejected an identical claim in *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007), where the defendant claimed "that the detention continued because Deputy Rhodd turned around very shortly after returning the papers and resumed his questioning." *Id.*  The fact that Trooper Dean turned around very shortly after returning the papers and resumed his questioning is not coercive.

Defendant also suggests that the flashing emergency lights precluded a consensual encounter. In this case, it is not clear whether Trooper Dean's emergency lights were or were not flashing at the time he issued the warning citation. Trooper Dean testified that he did not recall when he deactivated his emergency lights, and did not offer testimony regarding patrol policy regarding this task. Defendant concedes that the video tape of the stop is ambiguous in this respect.

Defendant contends that she had a legal duty to remain at the scene as long as the emergency lights remained on, but cites no authority in

support of that idea. (Dk. 22, p. 6). Although Kan. Stat. Ann. § 8-1568 prohibits a driver from willfully fleeing or attempting to elude a pursuing police vehicle that is giving a visual signal to stop, a police vehicle that is parked behind a stopped car is not a "pursuing police vehicle," and a driver would not be deemed to be "willfully fleeing or attempting to elude" an officer if the driver departed after having stopped and having received the officer's tacit or express permission to leave. This court will not read this statute to require a defendant to remain at the site of a traffic stop as long as the trooper's emergency lights remain on, where other circumstances indicate the officer has authorized him to leave.

> [R]easonable persons deciding whether they were free to leave would give more weight to the officer's statement wishing them a safe trip and the officer's conduct in stepping away from the car than to the patrol car's activated emergency lights. It is unlikely that any person would believe they were fleeing an officer just because of the activated emergency lights when the officer has returned all the paperwork, wished them a safe trip and stepped away from the car.

*United States v. Edgerton*, 2004 WL 2413553, *11 (D.Kan. 2004), *reversed on other grounds*, 438 F.3d 1043 (10th Cir. 2006).

Based upon the totality of the circumstances in the present case, the court finds that the circumstances would not have caused a reasonable person in the defendant's position to believe that he was not free to end the

13

conversation and be on his way. There is no alleged application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no threat, no command, and no use of an authoritative tone of voice. The trooper's conduct and words were sufficient to convey to the defendants that any seizure had ended and that they were free to go. See *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). This is confirmed by the fact that co-defendant Martinez apparently indicated that he felt free to go after the trooper returned his documents by starting to roll up his window - an act consistent with one starting to drive away. The undisputed evidence shows the court that the encounter became consensual at the point Trooper Dean returned co-defendant Martinez's documents, told defendants, "Have a safe one - see ya," stepped away from the car, then reinitiated conversation with questions which defendants answered voluntarily and responsively.

Accordingly, defendant's assertion that her consent was a product of her illegal detention fails. Defendant's contention that she did not speak or understand English sufficiently to have rendered voluntary consent is unpersuasive. The driver, whose consent to a vehicle search is controlling, is not alleged to lack sufficient English skills to have understood and

responded to the questions asked by Trooper Dean. Further, from the Trooper's testimony and the defendant's statements captured on the video tape, this defendant appears to have been very conversational in English at the time of the stop, despite her asserted need for an interpreter at the time of her suppression hearing.

The court additionally finds that Trooper Dean had reasonable suspicion of criminal activity at the time he extended the traffic stop beyond its initial scope, based upon the combination of factors he articulated during the hearing, and the significance of those factors in his experience and training. These include the driver's lack of a valid license, defendants' implausible travel plans, the purchase and registration of the vehicle just two days before the stop, the unabated nervousness of the defendants, the strong odor of air freshener, the presence of a booster phone, and the driver's prior arrest for possession with intent to distribute drugs.

**Factual Nexus**

Even assuming, arguendo, that defendant's detention was illegal, defendant has nevertheless failed to satisfy her burden of establishing a factual link between the allegedly illegal detention and the discovery of the drugs in the vehicle.

> In order for a defendant to meet his burden of showing a "factual nexus," he must, "[a]t a minimum ... adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct [directed toward that complaining defendant]." *Id.* (emphasis added). In other words, "[i]n order to meet his initial burden under *Nava-Ramirez* and demonstrate the required factual nexus, [a defendant] must show that the [contraband] would never have been found but for his, and only his, unlawful detention." *United States v. DeLuca*, 269 F.3d 1128, 1133 (10th Cir. 2001).

*United States v. Ladeaux*, 454 F.3d 1107, 1111 (10th Cir. 2006) (stating that the nexus requirement of *Nava-Ramirez* is applicable in cases "where the illegality complained of is not a search (to which the defendant lacks standing to object) but an illegal detention of that non-owner defendant").

Defendant has failed to show that, but for her allegedly illegal detention, the officers would not have discovered the cocaine in the vehicle. She does not contend that prior to her allegedly illegal detention she was empowered to remove the vehicle containing the cocaine from the officers' reach, or that she had permission at any point in time to leave with co-defendant Martinez's vehicle. Instead, Trooper Dean clearly and credibly testified that he would not have permitted defendant to leave with co-defendant Martinez's vehicle after he formed reasonable suspicion of criminal activity. Although he might have permitted the defendant to leave

without the vehicle, he firmly asserted that "the car was staying."

Moreover, defendant does not claim, nor does the record show, that during the course of her allegedly illegal detention Trooper Dean either obtained information from her by questioning or found evidence on her person that caused him to search the vehicle and discover the contraband. Based on Trooper Dean's testimony, the court finds that the officers would have searched the vehicle regardless of whether defendant was illegally detained at the search site or was permitted to depart. Accordingly, defendant's allegedly illegal detention has no factual nexus to the discovered cocaine.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk.15) is denied.

Dated this 7th day of March, 2008, Topeka, Kansas.

> s/ Sam A. Crow
> Sam A. Crow, U.S. District Senior Judge